(49 App. Div. 16.)

### HOLLINGSWORTH v. SPECTATOR CO.

(Supreme Court, Appellate Division, Second Department. March 13, 1900.)

LIBEL—WORDS ACTIONABLE PER SE—INJURY TO BUSINESS.

The publication of the statement, concerning one engaged in the business of adviser in insurance matters for policy holders and for state insurance departments, and as an examiner for such departments, that, as the representative of the department of the state of Texas, he had been refused permission to participate in an examination of a certain insurance company recently made by the insurance departments of several other states, and that the fact that such insurance company is now submitting to an examination on the part of the state of Texas, under the direction of the deputy insurance commissioner of that state, who has the rejected representative in his employ, is due to the concession by the president of the company of

the right of that state to make an examination, provided it is done by a reputable deputy, and one who is properly commissioned, is actionable per se, in that it tends to prejudice the person referred to in both his office and business, and to bring him into the contempt of those interested in the matter incident to his occupation.

Goodrich, P. J., dissenting.

Appeal from special term, New York county.

Action by John E. Hollingsworth against the Spectator Company for damages for libel. From a judgment for defendant on demurrer to the complaint, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and HATCH, WOODWARD, and HIRSCHBERG, JJ.

Henry T. Fay, for appellant.
Franklin Bartlett, for respondent.

HIRSCHBERG, J.   The action is for libel.   The decision rests upon the ground that the words used are not libelous pér se.   The complaint alleges, in substance, that the plaintiff is, and was at the time of the publication complained of, engaged in the city of New York in the business of adviser in insurance matters for policy holders and for state insurance departments, and as an examiner for such departments; that the insurance departments of the several states are accustomed to employ persons engaged in plaintiff's business to examine the business and financial conditions of the various insurance companies, and to report the results of such examination, in order to enable the respective departments to determine the right of such insurance companies to do business in the states, respectively; that policy holders, actual and prospective, are also accustomed to employ such advisers and examiners to manage and conduct their negotiations and business relations with the insurance companies; that the plaintiff is of good name and credit in his business, and that his business depends on his good name, and on his reputation and credit for integrity, skill, and ability in its conduct, and on the personal trust reposed in him by his clients and the public; and that at the time of the publication complained of, and during the preceding month, he was employed by the insurance commissioner of the state of Texas, and was actually engaged, in making an examination of the business and financial condition of the Mutual Life Insurance Company of New York on behalf of and for the Texas department of insurance.   The complaint further states that the defendant is, and was at the time referred to, the publisher and proprietor of a weekly review of insurance, printed and circulated in New York, called "The Spectator"; and that on February 2, 1899, they published in that paper a false and defamatory article about him, as follows:

"The Spectator of last week announced that John E. Hollingsworth, ex-insurance commissioner of Texas, more recently holding an appointment as an examiner for the insurance department of that state, was engaged in making an examination of the Mutual Life Insurance Company. This appeared to us to be somewhat singular, and, in view of the fact that an exhaustive examination of the company was recently completed by the New York department, assisted by duly-accredited examiners from Wisconsin, Illinois, Michigan, Min-

nesota, Ohio, and Missouri, the report of which has not, however, been made public as yet. * * * The work, we understand, is being conducted under the direction of A. S. Thewatt, deputy insurance commissioner of Texas, who has several others in his employ besides Mr. Hollingsworth. * * * It will be remembered that, when the seven-state examination of the Mutual Life was made, Superintendent Payn refused to permit Mr. Hollingsworth to participate in it as a representative of the Texas department, and that the Texas deputy commissioner is now making a special examination is probably a concession made by the amiable president of the Mutual of the right of the Texas department to examine the company through a properly commissioned and reputable deputy."

The rule as to actionable words, uttered of one in respect of his official, professional, or business occupation, is quoted by Mr. Townshend in his work on Slander and Libel, at section 188, on the authority of Onslow. v. Horne, 3 Wils. 186, as follows:

"Words are actionable when spoken of one in an office of profit, which may probably occasion the loss of his office, or where spoken of persons touching their respective professions, trades, and business, and do or may probably tend to their damage."

The author adds:

"Although every lawful lucrative occupation is, as regards the actionable quality of language, governed by the same general principles, yet the kind of occupation affects the application of the principles, and the identical language which may be not actionable as concerning one in some certain occupation may be actionable as concerning one in some other occupation. The test in every case by which to decide if the language be actionable, meaning actionable per se, is, does it necessarily occasion damage? And because the language which may necessarily occasion damage in one occupation will not have that effect in some other it happens that in every case regard must be had to the character of the occupation."

In Sanderson v. Caldwell, 45 N. Y. 398, 405, the rule derived from the authorities, and with which most of the cases can be reconciled, was stated to be that:

"When the words spoken have such a relation to the profession or occupation of the plaintiff that they directly tend to injure him in respect to it, or to impair confidence in his character or ability when, from the nature of the business, great confidence must necessarily be reposed, they are actionable, although not applied by the speaker to the profession or occupation of the plaintiff; but when they convey only a general imputation upon his character, equally injurious to any one of whom they might be spoken, they are not actionable, unless such application be made."

And in Moore v. Francis, 121 N. Y. 199, 23 N. E. 1127, 8 L. R. A. 214, it was held that words written or spoken of one in relation to his business or occupation which will have a tendency to hurt, or are calculated to prejudice, him therein, are actionable per se, although they charge no fraud or dishonesty, and were uttered or written without actual malice.

The question presented is, therefore, whether the words of which the plaintiff complains are calculated, or tend, to hurt or prejudice him in his office or business. Do they reflect upon his professional or business character, standing, and repute? That his occupation is one of trust and confidence is apparent. He was actually engaged at the time of the publication in making an official examination of the condition of the Mutual Life Insurance Company as an

examiner for the insurance department of the state of Texas. The defendant's newspaper might with entire propriety comment fully and fairly in reference to such examination, and no truthful assertion could be made the ground of action. But if the incident was made by it the occasion for casting injurious aspersions upon the plaintiff in reference to his occupation, such as necessarily tended to his prejudice, then the act would be unlawful and libelous. Now, what is the gist of the article, taken as a whole? It begins with a statement that last week the paper announced that the plaintiff was engaged in making an examination of the Mutual Life Insurance Company as an examiner for the state of Texas, and asserts that, in view of the fact that the New York department, assisted by duly-accredited examiners from six other states, had recently made an exhaustive examination of the company, the plaintiff's examination appeared to be somewhat singular. It then proceeds to explain the singularity by stating that the examination is really being conducted, as it understands, under the direction of the deputy insurance commissioner of Texas, Mr. Thewatt, who has several others in his employ besides the plaintiff, and adds, by way of final explanation, that, when the examination of the Mutual Life was made by the authorities of the seven states, it will be remembered that the New York department refused to permit the plaintiff to take part in it as a representative of Texas, and the fact that the company is now submitting to an examination on the part of that state is a concession by the president of the company of the right of that state to make an examination, provided it is done by a reputable deputy, and one who is properly commissioned. The fair inference deducible from the article, taken as a whole, is that neither the company under examination nor the official head of the New York state insurance department regarded the plaintiff as a "properly commissioned and reputable deputy," and that, therefore, the singular statement that he was engaged in making the examination was probably explained by the fact that the Texas department had others, besides him, in its employ, who were both duly-accredited and personally reputable. The entire article is without point unless it be to emphasize the fact that the plaintiff, as an examiner, was obnoxious to the company and offensive to the state department, while no objection could or would be made to "a properly commissioned and reputable deputy." If the statements contained in the article are false, as it is alleged they are, it is difficult to see why they are not defamatory. They tend to prejudice the plaintiff in both his office and his business, and to bring him in a measure into the contempt of those interested in the matters incident to his occupation. He is held up to the insurance world as blacklisted by the state of New York, so that, when the "singular" statement is made that a leading company has consented to an examination by him, the inference must be that some other individual is in fact conducting it, and who is acceptable, because properly commissioned and reputable. It is true that he is not called in terms a discredited and disreputable deputy, but the form of the words is unimportant, so long as the evident intent is to charge, and to naturally induce readers

to believe, that he is so regarded; and that intent can be fairly and necessarily deduced from the language actually employed.

No case in this state is cited in conflict with these views. In Labouisse v. Publishing Co., 10 App. Div. 30, 41 N. Y. Supp. 688, the publication on its face was calculated to aid, and not to injure, the plaintiff in his business. He was pictured as carrying on gigantic business transactions with reckless audacity, but with great success. No damage to his trade or business could be predicated of a charge which combined boldness with success, free from all suggestion of unskillfulness, incapacity, or dishonesty. In Ertheiler v. Bernheim, 37 App. Div. 472, 56 N. Y. Supp. 26, the words used were innocent and harmless when construed in accordance with their natural meaning. They charged neither dishonor or disrepute.

The judgment should be reversed, with costs, and with leave to the defendant to answer on payment of the costs. All concur, except GOODRICH, P. J., who dissents.

GOODRICH, P. J. (dissenting). I dissent from the opinion of Mr. Justice HIRSCHBERG, on the ground that the article does not impress me as being libelous per se.