56 N.J. Super. 178 (1959)
152 A.2d 140
JOSEPH McCASKEY, PLAINTIFF-APPELLANT,
v.
RICHARD W. KIRCHOFF, WILLIAM H. HAU AND ALEXANDER WOJCICKI, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 8, 1959.
Decided June 10, 1959.
*179 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Theodore Sager Meth argued the cause for appellants (Messrs. Meth & Wood, attorneys).
No brief was filed by respondents.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff appeals from a final judgment of the Superior Court, Law Division, holding valid a petition of nomination filed on behalf of defendants for public office in the Borough of Fairview.
On March 12, 1959 there was filed with the Bergen County Clerk a direct nomination by petition on behalf of the independent candidacy of defendants Richard W. Kirchoff for mayor and William H. Hau and Alexander Wojcicki for councilmen. The petition, consisting of four pages, contained the names and addresses of 110 allegedly legally qualified voters of the borough. The petition was certified to by the three nominees and two others, all of whose names appeared as voters signing the petition. The five took the oath required by R.S. 19:13-7 that the petition was made in good faith and that "the affiants saw all the signatures made thereto, and verily believe that the signers are duly qualified voters."
Within two days after the last date for filing petitions had expired, plaintiff, who was president of the Fairview Regular *180 Democratic Organization and a citizen and resident of Fairview, filed written objection to the petition with the Bergen County Clerk, pursuant to R.S. 19:13-10. The clerk proceeded to pass upon the validity of the objection in a summary way. N.J.S.A. 19:13-11. At the hearing held by the clerk on March 19, 1959 plaintiff contended that the signatures of Anna Capadonno and Stanley Wyrzykowski were forgeries and that the candidate-affiants knew them to be forgeries. Candidate Hau admitted that Caroline Wyrzykowski had in his presence signed the petition for her husband Stanley, who was not home at the time. Candidate Wojcicki admitted this, too. As for Mrs. Capadonno's signature, however, Hau insisted that her husband had signed the petition first, in his presence, and then Mrs. Capadonno had signed right after him. He told the county clerk that he was willing to swear that this is what happened; "I am a certified public accountant and I can't afford to gamble with anything like that. I would lose my whole reputation and I wouldn't have anything to go on from here on in if I did anything so foolish." Plaintiff produced a handwriting expert who declared that he had compared the signature on the petition with the known signature of Mrs. Capadonno and that they were not written by one and the same person.
The county clerk having determined that the petition of nomination was valid, plaintiff commenced an action by complaint and order to show cause in the Superior Court, Law Division, to have the petition declared invalid, alleging that the five affiants to the petition were not all present at the time each of the voters' signatures was placed on the petition; that every signature was not the true signature of the voter represented thereby; and that the certifying affidavit was not made in good faith, in that the affiants witnessed the making of signatures by persons other than those whose names appeared on the petition, contrary to R.S. 19:13-7.
*181 At that hearing the complaint was amended without objection to include the county clerk as a party defendant. It was then developed that the total number of signatures required for direct nomination by petition was 86, or 2% of the votes cast in the borough for members of the General Assembly at the last preceding general election. See N.J.S.A. 19:13-5. It was stipulated that if defendant Hau testified he would now say that Mrs. Capadonno did not sign her name to the petition, and that Mr. Capadonno signed for her. It was also stipulated that if defendant Wojcicki testified he would say he had witnessed Caroline Wyrzykowski sign the petition and that she also signed her husband's name. There were also presented three affidavits by voters who swore they had signed the petition, but not in the presence of the five affiants who swore to the certification. Plaintiff's argument before the trial judge, as before the county clerk, was that (1) the statute required that all signatures should have been witnessed by the five affiants, and (2) the affidavit of certification was false and fraudulent in that Hau and Wojcicki, two of the candidates named in the petition, witnessed the making of false signatures.
The trial judge stated that he believed that Hau and Wojcicki had sworn to the petition in good faith, and this in spite of the proofs  the affiants "may have been mistaken." He held, in effect, that the signatures of Mrs. Capadonno and Mr. Wyrzykowski could be disregarded, and that eliminating these signatures, there still remained more than the 2% required by the statute. This was error.
The statutory scheme of direct nomination by petition is designed as an alternative to nomination by primary election. The statute, R.S. 19:13-3 et seq., as amended, dealing with direct nomination by petition, reveals a legislative scheme and intent to insure the honesty of such nominations. See Sadloch v. Allan, 25 N.J. 118, 129 (1957). Section 19:13-5 requires that the petition be signed by legally qualified voters. Section 19:13-7 requires that
*182 "Before any petition shall be filed as hereinafter provided, at least five of the voters signing the same shall make oath before a duly qualified officer that the petition is made in good faith, that the affiants saw all the signatures made thereto and verily believe that the signers are duly qualified voters."
(Contrast the less restrictive provisions of R.S. 19:23-11, relating to verification of petitions in primary elections.) When this certification is complete and the candidate has manifested acceptance of nomination (N.J.S.A. 19:13-8), the petition is filed, subject to the making of written objection filed with the officer with whom the petition was deposited (R.S. 19:13-10). The statute provides for a hearing by the filing officer on the question of the validity of the objection (N.J.S.A. 19:13-11). A review of his findings by a proceeding in lieu of prerogative writs is afforded by R.R. 4:88-1 et seq. Cf. Murray v. Murray, 7 N.J. Super. 549 (Law Div. 1950).
It is established that at least two of the signatures on the petition were forgeries. Three of the five persons who swore to the petition were the very men who sought nomination to local office as independents. Since at least two of them knew that two of the signatures were not genuine, they swore falsely. They have made no explanation for their false swearing.
Additionally, it is manifest from the record that all five affiants did not witness all of the signatures. It would appear that the signatures were gotten by the five affiants working individually or in pairs. Here we may observe that the requirement that all five affiants should have witnessed all signatures to the petition is not unduly burdensome. In this case only 86 signatures had to be obtained; N.J.S.A. 19:13-5 requires 2% of the votes cast for assemblymen in the last general election, but no more than 100 signatures in any case. The required signatures could readily have been obtained by the five affiants at public meetings called by the independent candidates, if not by a door-to-door solicitation.
*183 If the salutary purpose of the Election Act to purify the politics of this State by preventing fraud and wrongdoing in the nominating procedure, Sadloch v. Allan, above, is not to be completely defeated, the assignment judge should forthwith have declared the petition invalid, instead of eliminating some of the signatures and holding that the remainder were enough to meet the minimum requirement of N.J.S.A. 19:13-5.
In Weisberger v. Cohen, 22 N.Y.S.2d 1011 (Sup. Ct. 1940), affirmed 260 App. Div. 392, 22 N.Y.S.2d 835 (App. Div. 1940), an independent nominating petition contained a false affidavit by the candidate as to the genuineness of signatures to the petition. He refrained from taking the stand to explain the circumstances of the forgeries or to disclaim his own participation in them. The court rejected not merely the forged signatures but the whole petition, as founded on a false authentication. We consider the following language of the court particularly appropriate:
"* * * If designating petitions are to perform their lawful and intended function, it is essential that they be kept free from fraud in the making. It is to that end that the legislature has made meticulous requirements with respect to them. The surest way to keep them free from fraud is to let it be known that any taint of fraud will wholly invalidate them, rather than merely set the court to the task of counting up the number of fraudulent instances in order to see whether they reduce the number of signatures below the minimum required by law." (22 N.Y.S.2d at page 1012)
The demonstrated falsity of the authenticating affidavit robs it of any effective force in furnishing the certification required by the statute. The signatures to the petition, the forged ones as well as the genuine, stand without a proper authentication. In cases like this the court should not, as one commentator on the Weisberger decision so aptly put it, sit as a "bookkeeper rather than as a justice, to apply a rule of arithmetic rather than a principle of equity." Abrahams, New York Election law, 123 (1950). And see the extension of the Weisberger holding in Collins v. Heffernan, *184 187 Misc. 165, 63 N.Y.S.2d 692 (Sup. Ct. 1946), where the candidate did not participate in the obtaining of the forged signatures, but the election workers who did were his friends, agents and employees.
We are of the opinion that candidates should not be allowed to go to the voters on a falsely sworn petition in circumstances such as are here present.
Reversed.