STEVEN J. STEGER, PLAINTIFF-RESPONDENT, v. STAN-
LEY C. SCHELLENGER, AS CLERK OF THE CITY OF
CAPE MAY, NEW JERSEY, DEFENDANT-RESPONDENT,
AND WALTER C. WRIGHT, Jr., INTERVENING DEFEND-
ANT-PETITIONER.

Argued August 6, 1960—Decided August 6, 1960.

*Mr. Walter C. Wright* argued the cause for the intervening defendant-petitioner.

*Mr. Jonathan W. Acton* argued the cause for the plaintiff-respondent.

*Mr. Morton I. Greenberg* argued the cause for the defendant-respondent.

PER CURIAM. This is an election case. A petition having been filed under *R. S.* 40:79–1 *et seq.* for a special election to adopt the municipal-manager form of government for the City of Cape May, the clerk of the municipality called for the election on August 9, 1960. A complaint was filed seeking to restrain the election. The defendant clerk conceded plaintiff should prevail, and in the light of the clerk's position, appellant was permitted to intervene to sustain the call for the election. The trial court granted summary judgment for plaintiff and the Appellate Division affirmed

for the reasons orally expressed by the trial judge. In view of the urgency of the matter we directed oral argument on the merits as if the petition for certification had been granted.

I.

The first question is whether the petition was invalid for want of verification. *N. J. S. A.* 40:80–1 does not in terms require verification but it is contended that the general election law does. Plaintiff refers first to *R. S.* 19:1–4 of the latter statute which reads:

"Except as in this title otherwise provided, the provisions for the election of public and party offices shall also apply to the determination of public questions under the referendum procedure so far as may be."

and then to *R. S.* 19:13–7 which deals with direct nomination by petition and provides:

"Before any petition shall be filed as hereinafter provided, at least five of the voters signing the same shall make oath before a duly qualified officer that the petition is made in good faith, that the affiants saw all the signatures made thereto and verily believe that the signers are duly qualified voters."

We do not agree. We cannot find satisfactory evidence that the Legislature intended the verification provision of the general election law to apply to a petition under *N. J. S. A.* 40:80–1. For one thing, we note that the Legislature dealt differently with the subject of verification in the general election law itself, specifying another mode of verification for nomination in a primary election, *R. S.* 19:23–11. Moreover, in the nature of the subject, the manner and scope of the verification must vary with the context, and what is appropriate in one setting may be burdensome or prohibitive in another. Indeed, if *R. S.* 19:13–7 were held applicable, it is doubtful that an election could be called in a populous municipality under the exacting requirement that

"at least five of the voters signing the same [the petition] shall make oath before a duly qualified officer that the petition is made in good faith, that the affiants saw all the signatures made thereto and verily believe that the signers are duly qualified voters." At any rate, it would be so burdensome that we should not lightly infer the Legislature intended by the general language of *R. S.* 19:1–4 that the provisions for the election of public and party offices "shall also apply to the determination of public questions under the referendum procedure so far as may be." The phrase, "so far as may be," is not followed by language specifying a controlling criterion. Whether the criterion to be inferred is "reasonable" or "appropriate" or "feasible" or "practicable" we need not now determine. We are satisfied that under any of these possibilities, a legislative intention to require verification of a petition under *N. J. S. A.* 40:80–1 is not revealed. We add still further that the Legislature has indicated a policy of determining the need for and the type of verification in statutes dealing with specific situations. See for example, the Optional Municipal Charter Law, *N. J. S. A.* 40:69*A*–1(*b*), 186. See also *Anthony v. Rea,* 22 *N. J. Super.* 452 (*App. Div.* 1952); *In re City of Passaic,* 94 *N. J. L.* 384 (*Sup. Ct.* 1920).

## II.

The second issue is whether the Absentee Voting Law (1953) repeals or renders inoperative the provisions of *R. S.* 40:79–1 *et seq.* for elections on petitions to adopt that statute. The precise point made is that the Absentee Voting Law (1953) calls for 40 days' notice, *N. J. S. A.* 19:57–7, a period incompatible with the direction in *R. S.* 40:80–2 that the election be held on the fourth Tuesday following the date of the filing of the petition with the municipal clerk.

We see no merit in this contention. The statutes may easily be reconciled by delaying the election to the first

Tuesday after the expiration of the 40-day period, which indeed was the course the municipal clerk here took in fixing August 9 as the date for the election. There surely is no express evidence of a legislative purpose to prevent an election; rather the purpose was to permit fuller participation in it. This construction gives effect to the legislative policies in both statutes.

### III.

The complaint alleged the petition was "misleading" because it contained a statement that under the Municipal-Manager form of government, the members of the three-man council would receive a salary of $600 per year each in the City of Cape May. The trial judge held the matter was committed to the initial judgment of the municipal clerk. .

It is conceded that the statement is accurate enough as to the present, but it is urged to be "misleading" in that one day the city may have a population in excess of 5,000, in which eventuality the salaries would be higher. We think that this challenge is wholly hypothetical and warrants no further discussion.

At argument, it was additionally suggested that some of the signers might have been led to believe that $1,800 would be the total expenditure for salaries of the governing officials and were not aware that a salary would also be payable to the City Manager. There is no evidence to support the conjecture and we cannot reasonably base a judgment upon that unlikely possibility.

### IV.

Finally it is urged that under *N. J. S. A.* 19:57–7 the notice for absentee voting was required to be published 41 days before the date of election rather than 40 days before that event as here was done. The cited section requires the notice to be "published prior to the fortieth day

immediately preceding the holding of any election." This interpretation analytically is possible but we believe the Legislature intended a 40-day notice provision in the conventional sense.

The petition for certification is therefore granted, the judgment is reversed, and the complaint is dismissed. The election shall proceed as scheduled on August 9, 1960. No costs.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR and SCHETTINO—5.

*For affirmance*—None.