87 N.J. Super. 587 (1965)
210 A.2d 415
IN THE MATTER OF THE PETITION FOR NOMINATION OF JOHN P. CHIRICO, IN THE DEMOCRATIC PRIMARY IN WOODBRIDGE TOWNSHIP, NEW JERSEY.
IN THE MATTER OF THE PETITION FOR NOMINATION OF R. RICHARD KRAUSS, IN THE DEMOCRATIC PRIMARY IN WOODBRIDGE TOWNSHIP, NEW JERSEY.
IN THE MATTER OF THE PETITION FOR NOMINATION OF GENE A. TOMASSO, IN THE DEMOCRATIC PRIMARY IN WOODBRIDGE TOWNSHIP, NEW JERSEY.
IN THE MATTER OF THE PETITION FOR NOMINATION OF JOSEPH C. DUNN, IN THE DEMOCRATIC PRIMARY IN WOODBRIDGE TOWNSHIP, NEW JERSEY.
Superior Court of New Jersey, Appellate Division.
Argued May 17, 1965.
Decided May 17, 1965.
*589 Before Judges GOLDMANN, SULLIVAN and LABRECQUE.
Mr. Sam Weiss and Mr. David Schechner argued the cause for the objectors (Messrs. Schechner & Targan, attorneys).
Mr. John R. Halleran and Mr. Isadore Rosenblum argued the cause for petitioners R. Richard Krauss, Gene A. Tomasso and Joseph C. Dunn (Messrs. Giordano & Giordano, attorneys).
Mr. Eugene Schreiner appeared for petitioner John P. Chirico.
GOLDMANN, S.J.A.D.
This is an appeal from orders of the Superior Court, Law Division, dated May 6, 1965, ordering the Middlesex County Clerk to place the names and slogans of John P. Chirico, R. Richard Krauss, Gene A. Tomasso and Joseph C. Dunn (hereinafter petitioners) on the ballot for the primary election to be held June 1, 1965, as Democratic candidates for nomination as councilmen for their respective wards in Woodbridge Township.
On April 22, 1965, the last day under the statute (N.J.S.A. 19:23-14) for filing for the June 1 primary election, petitions were filed with the township clerk nominating petitioners for the councilmanic offices in question. Each petition contained signatures in excess of the minimum 25 required in a municipality like Woodbridge Township. N.J.S.A. 19:23-8. Four days later, on April 26, the objectors filed written objections to these nominating petitions with the *590 clerk. He immediately wrote the respective petitioners, advising them that objections had been filed and that he would hold a hearing at 10 A.M. on April 28, for the purpose of determining the validity of the objections. This was the correct procedure under R.S. 19:13-11 and 12, as amended. The clerk specifically indicated that his determination "must be made by Wednesday, April 28, 1965." The petitioners received the clerk's letter April 27. A telegram sent the same day advised them of a change in the hearing hour from 10 A.M. to 2:30 P.M.
On April 28 petitioners applied for and obtained an order from Judge Halpern, assignment judge for Middlesex County, restraining the township clerk from proceeding with his proposed hearing and directing him to show cause the following day why the restraint should not be made permanent. (Petitioners' recourse to the Superior Court was apparently suggested by N.J.S.A. 19:13-12, which permits application to be made to that court at least 36 days before an election where a candidate alleges an invasion or threatened invasion of his rights under a petition of nomination.) On April 29, all parties consenting thereto, Judge Halpern assumed jurisdiction and proceeded to a full hearing to determine the validity of the objections which had been filed with the township clerk. The judge sat until 5:30 P.M., but then was obliged to continue the hearing until the following Monday, May 3, because of Friday's motion calendar.
Following the close of the hearing on Monday the trial judge rendered an oral opinion in which he determined that the verifications to the nominating petitions were defective. In so concluding he emphasized that he completely exonerated everyone connected with the petitions of any bad faith, fraud or wrongdoing. He then entered orders which, in the case of each petitioner, read as follows:
"IT IS, as of this 3rd day of May, 1965 found that the verification of the Petition for Nomination filed by the Petitioner is defective as of May 3, 1965, at 4:30 P.M.; and
*591 IT IS FURTHER ORDERED that this court is retaining jurisdiction because of the shortage of time, and if any amendments pursuant to N.J.S.A. 19:23-20 are proposed such are to be filed directly with the court."
Counsel for the objectors approved the orders as to form.
On the afternoon of the third day following  May 6  there were filed with the court amendments to the several petitions. After permitting counsel for the objectors to argue against the filing, the trial judge ruled that the petitions, as amended, conformed with R.S. 19:23-5 et seq., and directed that petitioners' names be placed upon the primary ballot.
This appeal followed. We scheduled briefs and argument on an emergency basis. The statutory requirement of mailing absentee ballots and the preparation of the voting machines for use on primary day require that this opinion be delivered as quickly as possible.
We observe, initially, that we are in essential agreement with Judge Halpern's oral conclusions of May 3. He was of the view that the election laws should be liberally construed; that the legislative purpose was to be ascertained by considering all provisions of the Election Act in pari materia, and that the proper method of determining the objections filed was to utilize the procedure set up under R.S. 19:13-10 et seq.  this in view of the provision of R.S. 19:23-58, part of the laws relating to primary elections, which reads:
"Any provisions of this title [Title 19] which pertain particularly to any election or to the general election shall apply to the primary election for the general election in so far as they are not inconsistent with the special provisions of this title pertaining to the primary election for the general election."
It is argued that the objections were filed out of time, since this should have been done within two days after the last day for filing petitions had expired, i.e., on April 24, as provided by R.S. 19:13-10. The objectors claim that they could not have done so on April 24 since that was a Saturday, nor on the 25th, a Sunday. The filing, perforce, had to be on Monday, *592 April 26. We need not pursue the matter further, for the clerk's office was not open for filing after the close of business on Friday afternoon, April 23.
We turn our attention to the core question posed by the objectors on this appeal. They contend that the trial judge erred in receiving the amendments to the petitions filed on May 6, only 26 days before the June 1 primary date, and in recognizing the amended petitions as a valid basis for determining that petitioners were Democratic candidates for nomination as councilmen, and for placing their names and slogans on the primary election ballot.
Chapter 23 of Title 19, "Elections," dealing with primary elections, provides in subsection 19 that where a nominating petition is defective except as to the number of signatures, the officer with whom the petition has been filed shall forthwith notify the candidate, "setting forth the nature of such defect and the date when the ballots will be printed." R.S. 19:23-19. The section immediately following, R.S. 19:23-20, permits the candidate to amend his petition "either in form or in substance, but not to add signatures, so as to remedy the defect within three days."
The objectors argue that any corrective amendments to the petitions should have been filed at least 34 days before the primary election, namely, on April 28. They rely on N.J.S.A. 19:13-13, which requires that amendments to defective petitions be filed at least 34 days before the primary election  here, on or before April 28. They have also called attention to the 34-day provision to be found in such sections of the Election Act as N.J.S.A. 19:23-12, 14 and 21. The objectors further argue that even were petitioners given three additional days from the date the petitions were ruled invalid in which to file their respective amendments, such amendments should have been filed no later than the 31st day before the primary election, namely, May 1. Since the amendments were filed on May 6, they were out of time.
As we read the Election Act, and particularly those provisions relating to primaries, we perceive an evident legislative *593 purpose to afford the electorate maximum opportunity to vote on those whose names have been put forward by nomination. The opportunity of voters to express their choice at a primary election should not be diminished by too narrow a reading of chapter 23 of Title 19. Our highest court has clearly expressed itself in this area, holding that election laws are to be construed liberally so as to effectuate their purpose; they should not be construed so as to deprive voters of their franchise. Wene v. Meyner, 13 N.J. 185, 197 (1953); Kilmurray v. Gilfert, 10 N.J. 435, 440 (1952).
An election challenge like the one here presented should be resolved in the light of the operative facts present. The situation here was that after nominating petitions had been timely filed, the township clerk received objections challenging the validity of the petitions. Ordinarily, he would have proceeded to dispose of those objections with all reasonable dispatch. Indeed, he attempted to do so when he scheduled a hearing in his office for April 28. That hearing was not held because petitioners immediately went before the assignment judge of the county to have him deal with the objections. He scheduled a hearing as promptly as possible, all parties consenting to his determining the matter. As noted, he sat until a late hour on Thursday afternoon, April 29, and then, because of the crowded motion calendar set down for the next day, the hearing had to be continued to the first available day, Monday, May 3. The hearing was then concluded and an immediate determination made. In our view, to permit the objectors to invoke the 34-day provision would run counter to the spirit and evident purpose of the Election Act provisions governing primary elections.
Once having determined that the original petitions were not in proper order, the court granted petitioners three days to cure the defective verifications by the filing of proper amendments. R.S. 19:23-20. This was done within the time fixed. Thus, the entire process was carried through to completion well before the dates when the ballots had to be printed and mailed. See R.S. 19:23-19.
*594 The right of petitioners to amend their petitions so as to cure any defects present should not be defeated by the delay necessitated because of their recourse to the court. We note, incidentally, that the adequacy of the amendments received and filed by the court has not been challenged.
The objectors also argue that since the petitions were found invalid, the faulty verifications were not amendable under R.S. 19:23-20 because a verification is not part of a petition. We find no merit in this contention since we are satisfied that the verification is an essential part of the petition and amendable under the cited section.
The objectors further contend that assuming R.S. 19:23-20 applies to verifications, it permits of amendments only, and not supplemental acts on the part of the original affiants or supplemental affidavits by others. They claim that the amendments which the trial court allowed amounted to adding additional signatures to the original petitions. We have examined the petitions and the amendments, and cannot agree with the argument thus projected.
As a final contention, petitioners allege that since the original verifications were "false," they may not be rehabilitated. Accordingly, the petitions must fall. McCaskey v. Kirchoff, 56 N.J. Super. 178 (App. Div. 1959), is cited as authority for this view. In the first place, McCaskey dealt with a direct nominating petition, R.S. 19:13-3 et seq., and in the course of the opinion this court took special note of "the less restrictive provisions of R.S. 19:23-11, relating to verification of petitions in primary elections." (at page 182) And see Steger v. Schellenger, 33 N.J. 293, 295 (1960). Secondly, we cannot accept the argument of the objectors that the affidavits to the petitions were "false." Judge Halpern carefully considered this aspect of the matter and found no fraud or intentional wrongdoing; rather, he stated that there was nothing more than bad judgment on the part of those involved in the petition process. He repeated these observations at the close of the argument addressed to the *595 amendments filed with him on May 6. Referring to his oral opinion of May 3, he said:
"* * * I saw nothing but decent citizens who signed petitions in good faith intending to support certain persons in the primary election to be held on June 1st. I found persons who swore to the affidavits, not with any intent to defraud me or anybody else, but because they thought they had a right to do so, * * *. These people acted wrongly in the legal sense, but not fraudulently, in my opinion, and I expressed it then and I express it now. * * * [T]here was good faith on the part of all concerned."
Thirdly, and as Judge Halpern pointed out, no question was raised about amendments in McCaskey, and so this court was not called upon to deal with the matter. Accordingly, we find McCaskey inapposite in the circumstances here present.
The orders under appeal are affirmed.