151 N.J. Super. 286 (1977)
376 A.2d 1248
CITIZENS FOR CHARTER CHANGE IN ESSEX COUNTY ET AL., PLAINTIFFS-APPELLANTS,
v.
NICHOLAS V. CAPUTO, COUNTY CLERK OF ESSEX COUNTY, AND JOSEPH ARANOFF, COMMISSIONER OF REGISTRATION OF ESSEX COUNTY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 3, 1977.
Reargued May 25, 1977.
Decided June 27, 1977.
*288 Before Judges LYNCH, MILMED and ANTELL.
Mr. David H. Ben-Asher argued the cause for appellants (Messrs. Baumgart & Ben-Asher, attorneys).
Mr. Francis Patrick McQuade argued the cause for respondent Essex County Clerk.
Ms. Erminie L. Conley, Deputy Attorney General, argued the cause for respondent Commissioner of Registration (Mr. William F. Hyland, Attorney General, attorney).
The opinion of the court was delivered by LYNCH, P.J.A.D.
Plaintiffs, proceeding under pertinent sections of the Optional County Charter Law, N.J.S.A. 40:41A-1 et seq., filed petitions on September 4 and 5, 1975 to have placed on the ballot for submission to the voters of Essex County at the November 4, 1975 general election the following question:
Shall the County Executive Plan of the Optional County Charter Law be adopted for Essex County, with provisions for a Board of Freeholders of nine (9) members elected for concurrent terms and elected five (5) by district and four (4) at large?
After several legal challenges to plaintiffs' petitions, they instituted an action in lieu of prerogative writs to establish their sufficiency. Judgment was entered against them and *289 they appealed. The Appellate Division allowed plaintiffs until October 10, 1975 to file supplementary petitions and, if sufficient valid signatures then appeared, the question was to be placed on the ballot at the general election to be held on November 4, 1975. Citizens for Charter Change, Essex Cty. v. Caputo, 136 N.J. Super. 424 (App. Div. 1975), certif. den. 74 N.J. 268 (1975). On October 14, 1975, after remand pursuant to said decision, plaintiffs sought additional time from the trial judge to complete their recheck of signatures which had been found to be invalid by the Commissioner of Registration. The request for additional time was denied by the trial judge. On further appeal the Appellate Division, in an unreported opinion filed March 30, 1976, again remanded the matter to the trial court to afford plaintiffs an additional 30 days to recheck the signatures and, if dispute persisted as to whether plaintiffs had obtained a sufficient number of valid signatures, a trial was to be had on that issue. The trial was necessitated by continuing disagreement on the matter. After several days of hearings, the trial judge ultimately dismissed plaintiffs' complaint on the ground that the petitions did not satisfy the requirements of N.J.S.A. 40:41A-20 which provides that such petitions must be signed "by a number of registered voters not less than 15% of the number of persons registered to vote in the county as of 40 days before the primary or general election next preceding the date of filing of such petition." Plaintiffs appeal.
The judgment of the Law Division determined that:
1. The number of registered voters in the County of Essex 40 days before the primary election held on June 3, 1975 was 383,371.
2. The number of valid signatures needed to appear on the petitions submitted by plaintiffs in order to authorize a referendum on the question presented was 57,505 (15% of 383,371).
3. Plaintiffs have failed to prove that the petitions contain the number of valid signatures required to authorize a referendum on the question proposed.
The trial judge held that there were only 55,209 valid signatures, 2,296 short of the required number.
*290 On appeal appellants contend that there was error in computing the required number of signatures and that, as to three separate groups of signatures, there was error in the failure on the part of the trial judge and/or the Commissioner of Registration to count them as valid. For clarity we shall discuss each type of alleged error as a separate item.

Item I

(6,221 voters on the "peremptory order list")
Plaintiffs contend that the trial judge erred in including among the "registered voters" of Essex County 6,221 voters who were on the "peremptory order list" in regard to the primary election of June 3, 1975 and who were therefore disqualified from voting. N.J.S.A. 19:32-15. The effect of this inclusion was to increase the number of signatures required on their petitions by 932 (from 56,573 if not so included to the 57,505 found to be required by the trial judge).
Whether those on the peremptory order list shall be included in determining "the number of persons registered to vote" depends on whether they were indeed "registered" in the sense intended by the statutory enactment.
A statute cannot be construed so as to lead to an unreasonable, absurd or anomalous result. State v. Gill, 47 N.J. 441 at 444 (1966); Marranca v. Harbo, 41 N.J. 569 (1964); Union Cty. Bd. of Chosen Freeholders v. Union Cty. Park Comm'n, 41 N.J. 333 (1964). We conclude that to consider those on the peremptory order list as "registered voters" within the meaning of the statute would lead to such a result. This is so because, though they are clearly not qualified to vote (N.J.S.A. 19:32-15), their elective voice would nevertheless be considered in determining the number of signatures required in order to place the referendum before the voters at large. As we have said, if, as the trial judge held, they were to be included as registered *291 voters, the required number would be 57,505, while if they are not included, it would be 56,573. In our prior decision in this matter, we held that the signers must be "qualified" voters. Citizens for Charter Change, Essex Cty. v. Caputo, supra 136 N.J. Super. at 431. We conclude that since those on the peremptory list are not so qualified, they are not to be considered as "registered voters" in the process of determining the number of signatures required to place the referendum on the ballot. By deducting the 6,221 on the order list from the number of "registered voters" as found by the trial judge (383,371) the number is reduced to 377,150. Fifteen percent thereof is 56,573, and that is the number of required signatures.

Item II

(706 signatures invalidated on the ground that there was no verification by the circulator of the petitions)
Plaintiffs contend that the trial judge erred in invalidating 706 signatures for the reason that verification by the circulator was missing, plaintiff's contention being that no such verification is required by the applicable statute, N.J.S.A. 40:41A-20. These signatures were among 1,170 which the Commissioner of Registration had rejected on the ground of lack of verification, 464 of which the trial judge, in turn, held valid, leaving the 706 here involved.
It is defendant's contention that the provisions of the General Election Law, Title 19, which require verification of a petition, should govern in this situation. We disagree. N.J.S.A. 40:41A-20 is the section of the Optional County Charter Law which governs the form of petition to be used in a direct petition for a referendum under the act. It does not require a verification by the circulator of the petition. And no other section of the law requires it.
*292 In an analogous context, i.e., a petition for a special election to adopt the municipal manager form of government (N.J.S.A. 40:79-1 et seq.), it was contended that the verification provisions of the General Election Law applied to the petitions for the special election. Steger v. Schellenger, 33 N.J. 293 (1960). In rejecting the contention the Supreme Court said:
* * * [T]he manner and scope of the verification must vary with the context, and what is appropriate in one setting may be burdensome or prohibitive in another. Indeed, if R.S. 19:13-7 were held applicable, it is doubtful that an election could be called in a populous municipality under the exacting requirement that "at least five of the voters signing the same [the petition] shall make oath before a duly qualified officer that the petition is made in good faith, that the affiants saw all the signatures made thereto and verily believe that the signers are duly qualified voters." At any rate, it would be so burdensome that we should not lightly infer the Legislature intended by the general language of R.S. 19:1-4 that the provisions for the election of public and party offices "shall also apply to the determination of public questions under the referendum procedure so far as may be." * * * We are satisfied that under any of these possibilities, a legislative intention to require verification of a petition under N.J.S.A. 40:80-1 is not revealed. [at 295-296]
Further, in Formal Opinion 15 of the New Jersey Attorney General (1959), it was held that the verification requirements of the General Election Law did not apply to the Sunday Closing Law, N.J.S.A. 2A:171-1 et seq. There it was noted that the large number of signatures required was a safeguard and that "it would be difficult in the absence of express or general provisions to the contrary to impose the additional requirement of verification of each signature."
For the same reasons expressed in Steger and the cited opinion of the Attorney General and because no provision of the Optional County Charter Law requires verification by circulators, we conclude that the 706 signatures here invalidated for lack of such verification were valid and are to be added to 55,209 signatures previously held to *293 be valid, making a total thereof of 55,915. At this point the total is still 658 short of the required 56,573.

Item III

(628 signatures previously invalidated by the Commissioner of Registration and again invalidated by him on August 6, 1976)
Plaintiffs contend that the Commissioner of Registration erroneously invalidated 628 signatures in his report of August 6, 1976.[1] They claim that since these signatures had been incorrectly rejected by the Commissioner in his October 1975 report, his invalidation of them on newly alleged grounds in August 1976 is contrary to the intent of this court's decision of March 30, 1976.
The testimonial basis for this contention of plaintiffs rests in the testimony of their witness Jeanne Graves. She testified that the 628 signatures were rejected by the Commissioner on certain grounds in his October 1975 report; that the Commissioner's invalidation was erroneous; that subsequently, in his report of August 6, 1976  during the trial pursuant to the Appellate Division's remand of March 30, 1976  the Commissioner invalidated these 628 signatures on another ground, and plaintiffs never had a chance to contest the new ground asserted by the Commissioner.
In this court's opinion of March 30, 1976, it was said: "The substantial public interest involved required that all rejected signatures be rechecked. Had this been done, the integrity of, and public confidence in, the pertinent referendum procedure * * * would have been maintained and strengthened." (Emphasis supplied). The decision clearly *294 contemplated that no further challenges to signatures would occur. Accordingly, the attempt by the Commissioner to invalidate these 628 signatures on new grounds in his report of August 6, 1976 must fall. We so hold. His invalidation of the 628 signatures in this group is reversed and their validation is ordered. Adding them to the previous total of valid signatures of 55,915 (see Item II above) plaintiffs, at this point, have a total of 56,543, which is still 30 short of the required total of 56,573.

Item IV

(134 signatures invalidated for the first time on August 6, 1976, during the trial in the Law Division; also 31 signatures invalidated on various occasions)
Plaintiffs contend that the Commissioner of Registration erred in invalidating 134 signatures in his August 6, 1976 report (during the trial in the Law Division) because he had not previously challenged them and plaintiffs had no opportunity to show that those signatures were valid. Plaintiffs also contend that the trial judge erroneously refused to accept testimony as to the validity of an additional 31 signatures which had been invalidated.
Here we have signatures which the Commissioner of Registration had veld valid in his October 1975 report and which he held invalid for the first time in his report of August 6, 1976, during the trial which is here being reviewed. Since they had been held valid in the first report, it is obvious plaintiffs would have no reason to recheck them and, as we said under Item III above, it was not contemplated by this court in its March 30, 1976 opinion that they were to be rechecked by plaintiffs. Again, as in Item III above, the attempt by the Commissioner to invalidate them in his report of August 6, 1976 must fall. Therefore the 134 signatures here involved are validated. Together with the 56,543 *295 signatures herein above found to be valid by this court, plaintiffs' total of valid signatures becomes 56,677, or 104 more than required to place the referendum on the ballot. N.J.S.A. 40:41A-20.
Since the remaining 31 signatures referred to in Item IV would require testimony which was excluded by the trial court, and since it has now been determined that plaintiffs have more than sufficient signatures to place the question on the ballot without these 31, we do not reach the issue of their validity.
Accordingly, the judgment of the trial court is reversed and the proposed question shall be printed upon the ballot and submitted to the voters of Essex County at the general election to be held on November 8, 1977.
NOTES
[1] The trial judge expressly refrained from ruling on the validity of signatures in Items III and IV herein for the reason that, in his view, even if the signatures in both categories were validated, they would not be sufficient to meet the required number.