376 A.2d 320

PHYLLIS JUNE VLASATY *vs.* RHODE ISLAND STATE BOARD OF ELECTIONS *et al.*

AUGUST 1, 1977

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

PER CURIAM.   This is certiorari to review a decision of the State Board of Elections which rejected the petitioner's challenge to the nominating papers of her opponent in the Democratic Primary for State Representative in the 98th Representative District.

The record indicates that Phyllis June Vlasaty, a candidate in the Democratic Primary for State Representative in the 98th Representative District, filed a petition before the State Board of Elections (the board) on March 15, 1977, challenging the eligibility of Mrs. Jeanne R. O'Rourke to be a candidate in said primary. The board held a public hearing on March 18, 1977, to consider the petition, which alleged that the nominating papers for Mrs. O'Rourke were not in order.

At the hearing, Stephen O'Rourke, Jr., the son of Mrs. Jeanne R. O'Rourke, stated that he signed, under oath, each and every nomination paper submitted on behalf of his mother, attesting to the fact that, in accordance with G.L. 1956 (1969 Reenactment) §17-14-10, "the signers of the within nomination paper (or papers) did so sign the same in my presence." He further stated that he filed the nomination papers with the Canvassing Authority of the City of Newport with the affidavit included thereon. However, he also admitted at the hearing that the affidavit he submitted under oath was false, in that he only personal-

ly witnessed 36 signatures out of the 138 submitted on behalf of Mrs. O'Rourke.[1]

The evidence at the hearing also showed that shortly before the deadline for filing nomination papers, five affidavits from individuals attesting to the fact that they were present when the signatures were obtained, were submitted to the Canvassing Authority. The affidavits were then stapled to the nomination papers that had been submitted on behalf of Mrs. O'Rourke.

On March 21, 1977, the board issued a decision denying the petition of Phyllis June Vlasaty, and ruled that Mrs. O'Rourke, having submitted nomination papers containing in excess of 50 signatures obtained in the presence of attesting witnesses, was qualified as a candidate in the Democratic Primary for State Representative in the 98th Representative District.

The petitioner then filed in this court a petition for a writ of certiorari to review the decision of the board. We issued the writ and pursuant thereto the record has been certified to this court. Because of the urgency of the matter we held an expedited hearing on April 22, 1977. We issued an order on April 27, 1977, denying and dismissing the petition but postponed the issuing of our opinion until this time. *Vlasaty v. State Bd. of Elections,* 118 R.I. 925, 374 A.2d 115 (1977.)

The only question raised in the petition is whether the board was correct in finding that the five supplementary affidavits satisfied the requirements of §17-14-10. The petitioner argues that the five affidavits should not even have been considered by the board because the earlier, falsely sworn affidavit tainted all of the signatures and rendered the entire attempt at nomination void. The petitioner also claims that even if the affidavits were entitled to considera-

---

[1]General Laws 1956 (1969 Reenactment) §17-14-7(e) requires at least 50 valid signatures for nomination for state representative.

tion, they should have been rejected for failure to comply with the prescribed statutory form. We reject both of petitioner's claims.

With respect to the first claim, we note that the statute only requires that a certain number of signatures, properly authenticated, be submitted in support of the candidate's nomination 52 days before the primary. There is no dispute that this was done.[2] The petitioner would have us infer, however, that an additional statutory requirement exists to the effect that where an affidavit is false, it taints any remaining affidavits and invalidates the entire nominating petition. The petitioner places primary reliance on *McCaskey* v. *Kirchoff*, 56 N.J. Super. 178, 152 A.2d 140 (1959). There, the court held that where the swearing witnesses were not present when some of the signatures were obtained, the entire petition should have been rejected. The court said, in part:

> "If the salutary purpose of the Election Act to purify the politics of this State by preventing fraud and wrongdoing in the nominating procedure, *Sadlock* v. *Allan,* above, is not to be completely defeated, the assignment judge should forthwith have declared the petition invalid, instead of eliminating some of the signatures and holding that the remainder were enough to meet the minimum requirement of *N.J.S.A.* 19:13-5." *Id.* at 183, 152 A.2d at 142.

We are not persuaded for several reasons. First, as was pointed out in a subsequent New Jersey case, *McCaskey* dealt with a direct nominating petition. *In re Chirico*, 87 N.J. Super. 587, 594, 210 A.2d 415, 419 (1965). That court took a less restrictive view of the verification of petitions in *primary elections,* which is the type of petition involved here.

Second, and more important, the statutory scheme before

---

[2] If the additional affidavits had been submitted *after* the statutory deadline, the issue would be entirely different. We express no opinion as to that situation.

us differs from that involved in *McCaskey* in that it strongly implies that one invalid affidavit does not invalidate the remaining affidavits. Section 17-14-9 provides, in part:

"In the event that a voter shall sign more nomination papers for any office than is permitted by law, the first nomination paper or papers, up to the maximum which he is entitled to sign, shall be valid, but his signature on all nomination papers filed thereafter shall be null and void."

Similarly, §17-14-11 provides that in the certification of nomination papers, "[I]f any signature is found to be invalid, for any reason in law, or forged, then such signature shall not be counted. " The clear import of these statutes is that *only* the invalid or forged signatures are to be discounted; if a sufficient number of valid signatures remain, the nomination is valid.

We see no reason to treat invalid or forged affidavits any differently. When faced with invalid attestations on nominating papers, other courts have followed a policy of striking out only those which were invalid. In *Hooper* v. *Power*, 17 App. Div. 2d 816, 233 N.Y.S.2d 392, *aff'd*, 12 N.Y.2d 764, 186 N.E.2d 565, 234 N.Y.S.2d 716 (1962), the attesting witness admitted that he could not remember being present when over 400 of 600 signatures were obtained. The court discounted these signatures, but allowed the remainder, which were sufficient to support the nomination. *See also Eagle* v. *Cox*, 268 Ky. 58, 103 S.W.2d 682 (1937). In other cases, courts have acknowledged the legitimacy of rejecting only such affidavits as are invalid, but have disallowed the nomination attempt because the number of signatures remaining did not meet the statutory minimum. *Williams* v. *Butler*, 35 Ill. App. 3d 532, 341 N.E.2d 394 (1976); *Metzger* v. *Eagan*, 24 App. Div. 2d 719, 263 N.Y.S.2d 202, *aff'd*, 16 N.Y.2d 837, 210 N.E.2d 644, 263 N.Y.S.2d 322 (1965; *Kerns* v. *Whiting*, 187 Misc. 656, 65 N.Y.S.2d 287 (Sup. Ct. 1946).

*Collins* v. *Heffernan,* 187 Misc. 165, 63 N.Y.S.2d 692 (Sup. Ct. 1946), upon which petitioner also relies, is not to the contrary. There, most of the affidavits were false, and there were few, if any, affidavits that were not invalid. This is completely at variance with the facts of this case, where there were admittedly a sufficient number of validly attested signatures.[3]

Accordingly, on the basis of the above authority and the legislative intent apparent in §§17-14-9 and 17-14-11, we conclude that where in connection with nomination papers an invalid or false affidavit is filed, chapter 14 of title 17 does not preclude the consideration by the board of such other, timely-filed affidavits as may be submitted with respect to those nomination papers.

The petitioner's second argument is that the board should have rejected the subsequent affidavits because they did not appear on the nomination papers themselves, but instead contained only handwritten notes specifying to which signatures they referred. Again we are faced with a problem of statutory interpretation.

Section 17-14-10 specifies the exact text which an affidavit must contain. The five supplementary affidavits did indeed contain this language. But petitioner argues that we may infer from the existence of §17-14-10 that *only* the statutory language may appear in an affidavit. We see no reason to draw such an inference. The statute implies no such requirement. The purpose of the affidavit is to guarantee the validity of the signatures. This purpose is not hindered by the addition of words other than those required by §17-14-10.

The petitioner also argues that, because the nominating papers which are supplied by the board contain the statutory language, an affidavit which does *not* appear on the nominating papers is invalid. Again, we do not agree.

---

[3]We note also that in this case there was no showing that the candidate herself knew that false affidavits were filed.

Section 17-14-10 does not regulate anything but the text to be used. The mere fact that the text is usually printed on the nomination papers does not make such printing a statutory requirement. The petitioner has not shown that there is any doubt as to which signatures are claimed to have been made in the affiant's presence. Accordingly, we conclude that the affidavits do not fail to meet the requirements of §17-14-10..

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed and the records certified to this court are ordered returned to the respondent board with our decision endorsed thereon.

*Richard P. D'Addario,* Rhode Island Legal Services, Inc., for petitioner.

*Julius C. Michaelson,* Attorney General, *Allen P. Rubine,* Special Assistant Attorney General, *Stephen F. Achille,* for respondents.