In the Matter of the Application of LOUIS J. LEFKOWITZ and A. DAVID BENJAMIN, Petitioners, Respondents, for an Order against S. HOWARD COHEN and Others, Constituting the Board of Elections of the City of New York, Respondents. JOHN R. DAVIES, Appellant.

In the Matter of the Application of JOHN R. DAVIES, Petitioner, Appellant, against S. HOWARD COHEN and Others, Constituting the Board of Elections of the City of New York, and A. DAVID BENJAMIN and LOUIS J. LEFKOWITZ, the Objectors Herein, Respondents.

First Department, September 9, 1941.

*John F. X. Finn* of counsel, for John R. Davies, petitioner-appellant.

*Louis J. Lefkowitz* of counsel, for Louis J. Lefkowitz and A. David Benjamin, petitioners-respondents.

*Robert H. Schaffer* of counsel, for the board of elections of the city of New York.

PER CURIAM. This is an appeal from an order which declared void a petition designating John R. Davies as a Republican candidate for the office of mayor of the city of New York and which enjoined the board of elections from placing the name of such candidate on the Republican ballot in the primary election to be held on September 16, 1941. Upon objections filed by petitioners the Special Term has held the petition invalid because it contained less than 5,000 proper signatures, that being the number required for a designating petition for mayor under section 136 of the Election Law.

On the face of the petition as originally filed there appeared 13,118 signatures. By concession of counsel for the designee 4,649 signatures were ruled invalid by the board of elections for various irregularities; 1,970 of the signatures were conceded not to be genuine and 317 other signatures were admittedly invalid because

signed upon sheets of the petition whereon the authenticating affidavits of the subscribing witnesses were improper. Thus, 6,936 signatures were held invalid. There remained 6,182 signatures claimed by appellant to be valid.

The Special Term in invalidating the petition set forth three specific grounds. We shall discuss each separately.

(1) The court held the entire petition void because he found it "saturated with fraud." He based this conclusion upon the admitted fact that 3,932 signatures appearing on the face of the designating petition were not genuine. It is to be noted that of these 3,932 signatures, 1,962 had been found invalid for other reasons and hence the deductions for forged signatures amounted to 1,970. As there were 3,932 signatures not genuine out of a total of 13,118, the court decided that there was sufficient fraud to justify a rejection of the petition in its entirety. In so doing the court relied upon the case of *Matter of Weisberger* v. *Cohen* (260 App. Div. 392). In that case, however, this court invalidated a designating petition because it was shown that the candidate himself actively participated in the fraud. No such proof exists here. On the contrary, the Special Term specifically determined that the candidate, who testified as a witness, in no way participated in obtaining any of the challenged signatures and that he had no knowledge of any irregularities. Moreover, the court found that the group of men to whom the designee had intrusted the work of conducting his campaign were not guilty of participation in any frauds.

We think it was error in such case to hold void a petition which contained a sufficient number of valid signatures as specified in the Election Law. To reject this petition would result in depriving qualified signers of the benefit of having the name of their designee appear on the official ballot. They should not lose their right to designate a candidate simply because others over whom they have no control may have perpetrated a wrong. Where they, as well as the candidate, are wholly innocent of wrongdoing, it would be unjust to deprive them of having their designee's name printed upon the official ballot to be voted on at the primary election. Persons who obtain signatures to designating petitions are not the agents of all of the signers so as to make those who are honest chargeable with knowledge that some of the signatures are forged or fraudulent. (*Matter of Burke* v. *Terry*, 203 N. Y. 293, 297.)

(2) The court found that of the 6,182 valid signatures, 3,482 were authenticated by subscribing witnesses who had not made the affidavits required by law. These subscribing witnesses were in the employ of one Simeon J. Beckerman, a professional procurer

of signatures. Twenty-seven of the thirty-five persons so employed by Beckerman as canvassers to obtain signatures to the petition testified that they had not in fact sworn to the truthfulness of the affidavits which appear on the face of each page of the petition and which are the affidavits by which the signatures of the voters are authenticated. The court held in effect that the affidavits purporting to have been made by these subscribing witnesses were not affidavits and for that reason rejected this group of signatures. We have read the testimony upon the issue as to whether these affidavits were in fact sworn to by these witnesses. It appears that each of the canvassers employed by Beckerman filled in his name at the beginning and at the end of the affidavit form annexed to each page of the petition; each stated that the signatures of electors obtained were in all respects valid. All of these canvassers employed by Beckerman who testified that the final step of administering the oath was not complied with, contended that they had not been adequately compensated for the work they had performed. All admitted, however, that they had handed in the sheets duly signed to persons in charge of Beckerman's office. Some testified that the sheets had been delivered to Mrs. Brandstein, who was the daughter of Beckerman and who was the notary public who claimed to have administered the oaths of authentication. Each of the twenty-seven witnesses, most of whom were attorneys at law or law clerks, had first filled in the affidavit form at the beginning and at the end, indicating that each had been duly sworn and that each was making under oath the statements set forth in the affidavit as required by statute, and Mrs. Brandstein testified that thereafter each took the required oath before her. The witness Fairchild corroborated the testimony of Mrs. Brandstein in some respects.

In the circumstances we feel that to reject these petitions upon the mere statements of admittedly disgruntled employees that they were not properly verified, was improper. The writings which they had executed, together with the other testimony in the case, compel us to conclude that there was due compliance with the requirements of statute.

(3) The court also sustained an objection to the validity of 1,481 other signatures of the 6,182 upon the ground that forged or irregular signatures to an aggregate number of over 3,900 were found on the sheets which also contained the 1,481 genuine signatures. As this number represented only about thirty per cent of all the signatures on the petition sheets on which other signatures were conceded to be irregular, the court stated that the affidavits made by the subscribing witnesses on the said petition sheets compelled the

court to disbelieve the authentication of the genuine signatures on the sheets. The court's reasoning was that since some of the signatures were conceded to be forged, the subscribing witnesses could not be believed as to the authentication of the genuine signatures on the pages.

The difficulty with the position taken by the Special Term judge, as we see it, is that the 1,481 persons whose signatures are admittedly genuine and whose signatures were properly obtained, are disfranchised through no fault of theirs and because their names happened to be on sheets which contain names that are irregular. In the absence of proof that the 1,481 signatures were not genuine, it would be unjust to rule out such signatures.

Upon all the evidence, we find that the petition of appellant contains 6,182 valid signatures. This is more than 1,000 in excess of the number required by statute.

Under the system of direct primaries which prevails in this State with respect to municipal as well as other elections, candidates of the various political parties for public office are selected by vote of the enrolled voters of said parties cast at a primary election. The right to have a candidate's name voted on in the primaries is based on the presentation and filing of a petition, duly authenticated, containing the signatures of a specific number of enrolled members of the party.

Where, as here, a petition containing the requisite number of signatures has been filed, the enrolled voters of a party should not be precluded from having the issue concerning the election of their designee determined by vote of the members of the party.

We find that there were 6,182 valid signatures of enrolled Republicans on the Davies petition and we hold that the court was not warranted in declaring invalid the petition.

The order granting the motion of petitioners Lefkowitz and Benjamin to declare the petition invalid, null and void should accordingly be reversed, without costs, and the said motion denied.

And the order denying the motion of John R. Davies for an order directing the board of elections to place his name on the Republican primary ballot for the office of mayor of the city of New York should be reversed, without costs, and the said motion granted.

O'MALLEY, GLENNON, COHN and CALLAHAN, JJ., concur; DORE, J., dissents and votes to affirm.

Orders, so far as appealed from, reversed, without costs, and the motion of petitioners Lefkowitz and Benjamin to declare invalid, null and void the petition purporting to designate John R. Davies

as the Republican candidate for the office of mayor of the city of New York and to enjoin and restrain the board of elections from placing his name as such a candidate on the Republican primary ballot in the primary election to be held on September 16, 1941, denied; and the motion of the petitioner John R. Davies for an order directing the board of elections to place his name on the Republican primary ballot for the office of mayor of the city of New York to be voted upon at the primary election to be held on September 16, 1941, granted.