■ In the Matter of BARBARA S. HOOPER, Respondent, v. JAMES M. POWER et al., Constituting the Board of Elections of the City of New York, and PIERCE PALEY, Appellants, and GEORGE J. MURPHY et al., as Members of the Committee to Fill Vacancies, Respondents.— Final order entered October 18, 1962, invalidating the independent nominating petitions of the "Save the West Side" party reversed on the law and the facts and petitions validated and injunction restraining Board of Elections from placing respondent's name on the ballot as the candidate for the "Save the West Side" party vacated, without costs. Nominating petitions on behalf of respondent-appellant were filed nominating him for the Assembly, Fifth Assembly District of Manhattan. A petition for this office requires 1,500 valid signatures (Election Law, § 138, subd. 5, par. [c], cl. [5]). Three groups of signatures were stricken. The first consisted of 184 signatures on the ground that the signers signed a designating petition for another candidate for the same office. We agree with Special Term that these signatures were properly disallowed. Subdivision 6 of section 138 of the Election Law provides that a name on a nominating petition shall not be counted "if the name of a person who has signed such a petition appears upon another petition nominating the same or a different person for the same office." It is claimed that these words apply to a nominating petition only and not to a designating petition. While the law in certain instances differentiates between these two types of petition, in this connection the words "nominating" and "designating" are used without distinction and the one includes both. The purpose of the statute is to limit each voter to a single choice for the office and it is immaterial whether he indicated his choice by way of nominating or designating. The second group consists of 220 signatures stricken by Special Term on the ground that these signers voted in the Democratic primary. In that primary election, there was no contest for Assembly and no vote was or could have been cast for that office. Petitioner concedes that the voters in that election did nothing which indicated any indorsement of any candidate for the Assembly. Section 149 of the Election Law provides: "All persons designated for uncontested offices or

positions at a primary election shall be deemed nominated or elected thereto, as the case may be, without balloting." The section dispenses with the primary for an office when there is no contest. Participation in such a primary which involves contested candidacies for other offices does not imply a choice as to the offices which are not contested, because as to these the voter has indicated no preference and has no opportunity to indicate a preference. The final group consists of 156 signatures which were invalidated for irregularity in acknowledging signatures. It was testified to by one witness that he could not recall whether most of the persons whose signatures he witnessed actually signed in his presence or acknowledged their signatures to him. As to about 20% of the signatures he took he could and did testify that they were signed in his presence. By stipulation it was agreed that other witnesses would testify similarly and that the total of the signatures so testified to would amount to 156. These petitions contained the names of 625 other signers which were stricken without objection. We believe that the 156 names should not have been stricken. The theory upon which Special Term acted was that the irregularity was so general that all of the petitions witnessed by these witnesses should be invalidated. We believe that those signers whose signatures were properly attested should not have been disenfranchised (*Matter of Lefkowitz* v. *Cohen,* 262 App. Div. 452, affd. 286 N. Y. 499). With these signatures restored as above indicated the petitions contain sufficient signatures as required by the Election Law. Some question was raised whether all the petitions were void for fraud. We discover no finding of the court on this contention. Where the candidate actively participates in the wrong, the presence of invalid signatures does not *ipso facto* invalidate the petition. But it does put the burden on the candidate or the proponents of the petition to establish that the remaining signatures are valid (*Matter of Weisberger* v. *Cohen,* 260 App. Div. 392). Otherwise the burden remains on the objectants and here the stipulations effectively dispose of their contention. Concur — McNally, Eager and Steuer, JJ.; Valente, J. P. and Stevens, J., dissent in the following memorandum: We disagree with the holding of the majority validating and reinstating the petition of the appellant herein. We would affirm the determination of Special Term for the reasons stated in the opinion of the Justice there presiding; and we would add the following comments regarding the 220 signatures which were eliminated on the ground that the signers had theretofore voted in the Democratic primary election. The language of section 149 of the Election Law contains significant phrases which make its meaning clear. It refers to (1) the designee for an uncontested office, (2) a primary election, (3) that the designee "be deemed nominated", and (4) "without balloting". Such a designee for an uncontested office — the statute reads — is "deemed nominated" at the primary election. Deemed nominated by whom? Certainly not by all the registered voters in his party; but logically only by those who vote in the primary election. Those voters are deemed to have voted for the designee without balloting. Since they are presumed to have voted for the uncontested designee, that presumption carries the same weight and consequence as if they had actually voted for the candidate. There is no question that in a primary contest where a designee's name appears on the ballot, no voter in that primary may thereafter sign an independent petition for such office. This is so irrespective of whether the voter did or did not vote for any of the candidates contesting a certain office. Hence, what disqualifies the voter in a primary from being a valid signer of a subsequent independent petition is the fact that he voted in the primary and not whether he voted for or against a particular candidate. The majority says that section 149 "dispenses with the primary for an office when there is no contest". It does no such thing. It merely dispenses with the necessity for balloting but the candidate is deemed nominated *at the primary election.* Again the majority

states that "Participation in such a primary [where there is no contest] which involves contested candidacies for other offices does not imply a choice as to the offices which are not contested, because as to these the voter has indicated no preference and has no opportunity to indicate a preference". However, the voter in a primary election had sufficient opportunity before the primary election to indicate a preference for any candidate by means of designating petitions. The fact that a nomination is uncontested demonstrates that the members of the party preferred that candidate and since no opposing candidate was designated waived the right to have a different one. Having thus tacitly indicated their preference, the voters at a primary are then saved the trouble — and the city the expense — of indicating the same thing at the primary election. The candidate is deemed elected, without balloting, because the voters in the primary election are conclusively presumed to have voted for him. The construction placed on section 149 by the majority would continue the right of the voter in a primary to make an independent choice after the primary. Not only is this contrary to the provisions of sections 134–137 of the Election Law, but it makes the position of a designee for an uncontested office less stable, although the import of the section is to render the nomination really "uncontested". The anamolous status of the uncontested designee, if the construction of the majority is adopted, is that he is lulled into a sense of security that the voters at the primary have all been deemed to have voted for him only to learn thereafter that, except for those actually signing his petitions, the other voters in his party primary may now nominate another candidate. If the construction of the majority is valid, then a candidate whose nomination is uncontested will, to afford proper protection, have to insist that his name go on the ballot. Then, even, for example, if one vote out of 500 is cast for him, he will be nominated; and the other 499 voters will not thereafter be able to contest the nomination by independent petitions. Moreover, the majority's construction would only mean the emasculation of section 149, for the party members may have to resort to the expedient of designating a straw man, ostensibly to contest the candidate of the party, so that the voters at a primary would thereafter be estopped from signing independent petitions. The purpose of section 149 was to avoid needless expense and effort where uncontested designations were involved. In accomplishing that purpose, it was not intended to detract from the effectiveness of a nomination so obtained, and render it less valuable or stable than a nomination obtained in a contest, whether close or overwhelming onesided. Special Term correctly gave the statute the construction that was consistent with its purpose and equitable to voters and candidates. Motion to dispense with printing granted.