Cooke, J.
(dissenting). I dissent and vote to affirm.
Arnold W. Proskin, appellant and a candidate for the Conservative Party nomination for the public office of Senator from the 42nd Senate District of the State of New York, instituted this proceeding for an order declaring invalid the petition designating Howard C. Nolan, Jr., as a candidate for said nomination at the primary election to be held September 14, 1976.
The petition under scrutiny contained 220 signatures. Special Term found 116 of the signatures were invalid and determined as a matter of law that the "petition is so permeated with forgeries, fraudulent practices and other irregularities, that the entire petition must be invalidated, in spite of the fact that only 63 signatures are required for a valid petition.” It also found specifically that "Nolan had no knowledge of forgeries, fraud or irregularities in this petition”—a broad finding, indeed.
The Appellate Division, in reversing unanimously on the law and dismissing the petition seeking invalidation, held that Special Term’s findings are supported by the record but that its legal conclusion is erroneous, citing Matter of Lefkowitz v Cohen (262 App Div 452, affd 286 NY 499). It was observed that the remaining 104 signatures on the designating petition were found to be invalid by Special Term, a fact conceded *831 with creditable candor by appellant’s counsel on argument in this court. Upon further questioning, it was revealed that of the 116 invalid signatures only 14 were forgeries, 8 of which were attributable to one subscriber.
The assumption that untested signatures suffer from the same defects as others is not justified here since 104 were affirmatively found to be valid and it was specifically found that there was no knowledge of the infirmities (and hence also no participation) on the part of the candidate. The only remaining theory on which the 104 signatures can be attacked is that the otherwise valid petition should be stricken as a forfeiture or penalty because of the 116 invalid ones. Such a sanction certainly is not in order where there is no knowledge or participation by the candidate. Otherwise, an innocent candidate would be penalized and, perhaps even more importantly, valid signatories would be disenfranchised.
In Matter of Lefkowitz v Cohen (supra) Special Term invalidated a designating petition even though the designee conclusively established that he did not participate in or have knowledge of the frauds (30 NYS2d 53, 60). The Appellate Division reversed and held: "We think it was error in such case to hold void a petition which contained a sufficient number of valid signatures as specified in the Election Law. To reject this petition would result in depriving qualified signers of the benefit of having the name of their designee appear on the official ballot. They should not lose their right to designate a candidate simply because others over whom they have no control may have perpetrated a wrong. Where they, as well as the candidate, are wholly innocent of wrongdoing, it would be unjust to deprive them of having their designee’s name printed upon the official ballot to be voted on at the primary election. Persons who obtain signatures to designating petitions are not the agents of all of the signers so as to make those who are honest chargeable with knowledge that some of the signatures are forged or fraudulent. (Matter of Burke v. Terry, 203 N. Y. 293, 297.)” (262 App Div 452, 454.) The Court of Appeals affirmed at 286 NY 499. In Gassman, Election Law Decisions and Procedure (vol 1, 2d ed [1962]), it was noted at page 311: "The decision in re Lefkowitz has been steadily followed by the courts.”
In Abrahams, New York Election Law (1950), citing Lefkowitz and others, it was stated at pages 115-116:
"The presence of forged signatures, however abundant upon *832 petition sheets, will not as a matter of law, invalidate any sheet or the entire petition. Upon this precise principle the Court in Re: Benjamin supra* enunciated the rule to the effect 'That the presence of forged signatures on petition sheets do not invalidate the valid signatures commingled therein. Similarly, that forgeries upon numerous petition sheets will not, as a matter of law, invalidate the entire petition.’
"An extension of this doctrine automatically embraces authentications, so that, despite the presence of an irregular and perjurious authentication, a petition sheet containing forgeries will not be declared invalid in toto. The Court must subtract the valid signatures from the alleged forgeries. Any attempt to extend the doctrine or forgeries beyond its limitation, namely, to embrace petition sheets not so tainted by forgeries was overruled. For example, a subscribing witness to one or more forged sheets will not by implication nullify other valid petition sheets authenticated by him. An exception to these principles appears in only one situation, and that is, where it appears that the candidate whose petitions are attacked, actively aided, abetted and participated in the presentment of the forged petitions. Within the bounds of that limitation, an entire petition was held invalid.”
(See Matter of Lerner v Power, 22 NY2d 767; Matter of Hooper v Power, 17 AD2d 816, affd 12 NY2d 764; Matter of Reid v Trammell, 14 AD2d 243; 18 NY Jur, Elections, §§ 206, 207; cf. Matter of Galiber v Previte (40 NY2d 822 [Sept. 2, 1976]; see, also, Matter of Golden v Smoler, 26 AD2d 577, affd 17 NY2d 938; Matter of Weisberger v Cohen, 260 App Div 392.)
Since those words were written in Abrahams, the only exception appears in Matter of Aronson v Power (22 NY2d 759) where the candidate failed to come forward and testify as to his lack of participation and knowledge. Aronson, where it was held that petitioners sustained the burden of showing that the designating petition was so permeated with fraud as to invalidate the entire petition, is distinguishable. Although the Appellate Division there stated that there was no proof that the candidate himself participated in any such practice or irregularity (30 AD2d 651), here there is a specific finding that Nolan had no knowledge of the wrongful or tainted conduct. A brief (without contradictory comment in the oppos *833 ing brief) submitted in Aronson reveals that an attempt was made to serve a subpoena on Siller, the candidate, that petitioner’s attorney asked the referee to call Siller into court, that the referee indicated that he knew the inference that would arise from Siller’s refusal to testify and that, despite these facts, Siller did not take the stand. Here, Nolan came forward and testified in definite terms as to his lack of knowledge.
The order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli and Jones concur in Per Curiam opinion; Judge Cooke dissents and votes to affirm in a separate opinion in which Judge Fuchsberg concurs; Judge Wachtler taking no part.
Order reversed, without costs, and the judgment of Supreme Court, Albany County, reinstated.

 262 App Div 959