■  In the Matter of OLIVER PILAT et al., Appellants, v ALICE SACHS et al., Constituting the Board of Elections of the City of New York, Respondents, and MARIO M. CUOMO, Respondent-Respondent.—Judgment, Supreme Court, New York County, entered August 23, 1977, confirming a Special Referee's report and dismissing the proceeding under section 330 of the Election Law to invalidate the petitions designating Mario M. Cuomo as the Liberal Party candidate for the office of Mayor of the City of New York, unanimously affirmed, without costs and without disbursements. Petitioner seeks to invalidate the petition which purports to designate Mario M. Cuomo as the candidate of the Liberal Party for the office of Mayor of the City of New York on the theory the entire petition, as a matter of law, is permeated with fraud. On or about July 7, 1977, the Cuomo petition containing 5,373 signatures was filed with the New York City Board of Elections. After examination, the board of elections determined that 1,390 signatures were invalid for various reasons, leaving the petition with 3,983 signatures thereon. Thereafter, the petition was examined before two Referees designated by Justice Rubin of the Supreme Court. By stipulation between the parties and by ruling of Referee Rothberg it was determined that 232 signatures should be restored to the petition, thereby increasing the number to a total of 4,215 signatures. Of the remaining total signatures 410 were found to be forged and 1,104 signatures were deducted for noncompliance by notaries public and commissioner of deeds with the requirements for rendering oaths and 34 other signatures were invalidated for other technical reasons. Briefly stated the number of signatures found to be valid by Justice Rubin is 2,667. The number needed to place Cuomo's name on the

ballot as the Liberal Party candidate is 2,551. Petitioner sets forth the argument that technical aspects of the Election Law were not strictly adhered to. The entire object of our election laws, in furtherance of the democratic process, is to provide qualified voters the opportunity to designate a candidate of their choice, and to require a narrow and technical construction of these laws would defeat rather than effectuate that objective. It is reasonably to be expected that in the collection of over 5,000 signatures technical inadvertencies or irregularities, human nature being what it is, are bound to arise and those signatures characterized as irregular have been the subject of scrutiny by two Referees and the Justice in Special Term and in due course stricken from the petition in question. Petitioner further postulates the theory that the discovery of irregularities permeates the petition with fraud per se, and therefore calls for the invalidation of the entire petition. In *Matter of Proskin v May* (40 NY2d 829, 831 [Cooke, J.]) in his dissent quoting the Appellate Division in *Matter of Lefkowitz v Cohen* (262 App Div 452): " 'We think it was error in such case to hold void a petition which contained a sufficient number of valid signatures as specified in the Election Law. To reject this petition would result in depriving qualified signers of the benefit of having the name of their designee appear on the official ballot. They should not lose their right * * * simply because others over whom they have no control may have perpetrated a wrong * * * Persons who obtain signatures to designating petitions are not the agents of all of the signers so as to make those who are honest chargeable with knowledge that some of the signatures are forged or fraudulent.' " Further (Abrahams, New York Election Law [1950], pp 115-116): "The presence of forged signatures, however abundant upon petition sheets, will not as a matter of law, invalidate any sheet or the entire petition. Upon this precise principle the Court in Re: *Benjamin* [262 App Div 959] enunciated the rule to the effect 'That the presence of forged signatures on petition sheets do not invalidate the valid signatures commingled therein. Similarly that forgeries upon numerous petition sheets will not, as a matter of law, invalidate the entire petition.' An extension of this doctrine automatically embraces authentication, so that, despite the presence of an irregular and perjurious authentication, a petition sheet containing forgeries will not be declared invalid *in toto.*" We therefore concur with the holding of Special Term. Respondent argues that the petition is fatally defective in failing to join the first name member of the Committee on Vacancies of the Liberal Party, Ben Davidson, as a "necessary" party. Petitioner counters that Mr. Davidson was named in the petition portion of the petition and order to show cause, had notice of the proceeding and participated in the proceeding, and therefore is within the jurisdiction of the court. In *Matter of Lloyd v Power* (37 AD2d 792), the court said "Under the provisions of CPLR 1001-1004 there are no longer 'necessary parties' but only parties who 'ought' to be joined." The statute is clear as to when joinder may be excused (CPLR 1001, subd [b]). Further in *Lloyd (supra),* "The People's will should not be fettered by technicalities requiring precise compliance." *(Matter of Rosen v McNab,* 25 NY2d 798, 799). Respondent's argument must therefore fall. Oral application for leave to appeal to the Court of Appeals is granted. Concur—Silverman, Evans, Lane and Markewich, JJ.; Kupferman, J. P., concurs in result.