OPINION OF THE COURT
Arthur S. Hirsch, J.
A petition has been made to this court to invalidate a designating petition of Republican Party, 12th Congressional District, Kings County, listing as candidates the following: *477 Joseph M. Parrotta, Garfield Bobo, Lewis J. Brown, Anthony Cartafalsa, Donella J. Jackson and Alice M. Capatosto.
Petitioner has targeted in on three alleged violations of the Election Law, claiming that there was fraud committed, that the errors were of such serious nature as to require as a matter of law that the entire petition be invalidated. The first two violations deal with the false listing of addresses of candidates Garfield Bobo and Donella J. Jackson on the designating petition. The third violation is in regard to alterations made by Ms. Jackson on the petition.
Mr. Garfield Bobo testified that he is unmarried and that he maintains two residences, 385 Decatur Street and 77 Sullivan Place. The Sullivan Place apartment is located in a more affluent neighborhood and Mr. Bobo states that he finds it more suitable for entertaining acquaintances or guests. He uses it solely for social contacts and for receiving personal mail, while the Decatur address is the place that he always intended to be his official address. The Decatur address appears on his driver’s license and his income tax returns. It is his mailing address for his political or other official mail. Of salient importance is that his voting address for at least five years has been listed as 385 Decatur Street.
Mr. Bobo asserts he rents one room at the Decatur Street address from Mr. Wellington Sam, who resides in the apartment with Mrs. Sam and their son. For many years, Mr. Bobo has been involved politically and in community activities in the district in which the Decatur Street address is located.
Candidate Donella Jackson testified that since February, 1979 she has resided with her brother in a second-floor apartment at 98 Patchen Avenue. There is no gas service at that address, but Ms. Jackson states that she has electric heaters in her apartment. The house is being repaired at the present time with a gas boiler installation and other plumbing work in process. The two apartments on the second floor were recently painted. The main floor will house the offices of the Bedford-Stuyvesant Improvement Association, a civic group that purchased the building in 1978 from its then owner, Ms. Jackson, treasurer of the association, at the cost of $1. There is no telephone in Ms. Jackson’s apartment.
It is candidate Jackson’s testimony that during the alterations of the house, she Presides at times in her mother’s home, 64 East 92nd Street, and on some occasions, particularly when her mother was out of the State, Ms. Jackson stayed at her *478 mother’s home to keep watch over the property, but that it has always been her intention to keep the Patchen Avenue address, from which she votes, as her legal address. Ms. Jackson, too, has strong roots in the community in which the Patchen Avenue property is located. She has been politically active there for a number of years and has been active in community activities.
Two recent Court of Appeals cases, Matter of Gallagher v Dinkins (32 NY2d 839) and Matter of Bressler v Holt-Harris (30 NY2d 529), have manifested a marked change in interpretation of the residency requirement of the Election Law. Previously, the fact that a candidate desired, for political purpose, to vote or run for office from an address where he did not actually reside did not impress the court as compliance with the letter or intent of the Constitution or the Election Law of the State (Matter of Rooney, 172 App Div 274; 2 Gassman, Election Law, § 101, pp 549-550). Differentiating between a voting address and domicile residence is apparently no longer the criterion to be used, so long as the candidate has not newly acquired a voting address in a district in which he has no previous ties other than a desire to run for office from that district. The courts now take the view that if a person has a second residence in an area where he has roots with significant and legitimate attachments, either familial or through community commitment, has been politically active, has used it as his voting address, received mail and occasionally lived at the residence, it is within the candidate’s right to decide which residence shall be his voting and campaign address (Gallagher v Dinkins, supra, at p 841).
Both candidates Bobo’s and Jackson’s choice of residence for voting and campaigning come with the new standards set forth in the Court of Appeals cases cited above. Both have, over long periods of time, maintained strong ties in the district in which their choice of residence is located. They have shown intent to use these addresses as the center of their political activities. This court recognizes the validity of a continued concern for a community in which one’s commitment has been demonstrated over a long period of time. Petitioners have not proven, as they must, that Mr. Bobo and Ms. Jackson have been involved in a fraud or deception upon the voters as regards their residence. Accordingly, it is the ruling of the court that the address designated by these *479 candidates as their legal address is acceptable under the Election Law.
Where alterations are made in a petition and are part of pervasive fraudulent conduct of a candidate, the entire petition is deemed to be invalid (Matter of Collins v Heffernan, 187 Misc 165), but a different situation exists where a satisfactory explanation has been given for the alteration of a petition and where no effort has been made by the alterer to disguise or hide his or her identity or where the alterations are trivial and unimportant (Matter of Savoia, 65 NYS2d 18).
Donella Jackson testified that a change had been made in the layout of the petitions for this election and that, where previously the election district was listed first, with the assembly district following, they are now listed in the reverse sequence. As a result, a number of voters or subscribing witnesses automatically and incorrectly put the E.D. number in the first box and the A.D. number in the second, as they had done it in earlier years. In preparing the petitions for binding, Ms. Jackson stated she saw the error, corrected it and placed her initials beside the alterations to indicate her responsibility. This does not smack of fraud. The courts are not inclined to deprive a citizen from being a candidate in a primary or general election without a showing of fraud or serious offense (Matter of Lefkowitz v Cohen, 262 App Div 452, affd 286 NY 499). Accordingly, the court finds that the signatures upon which alterations have been made by Donella Jackson as to E.D. and A.D. numbers on petitions on which she is not the subscribing witness are deemed invalid and are stricken from the petition. However, the alterations were not part of fraudulent conduct on the part of candidate Jackson, which would have invalidated the entire petition. Therefore, as there remains a sufficient number of signatures to fulfill the Election Law requirement, the petition to invalidate the designating petition is denied.