■ In the Matter of IRMA RODRIGUEZ, Appellant, v MOSES S. HARRIS et al., Respondents.—In proceedings, *inter alia,* to (1) invalidate a petition designating Moses S. Harris as a candidate in the Democratic Party primary election to be held on September 9, 1980, for the public office of Representative to the United States Congress from the 14th Congressional District and (2) validate said designating petition, the appeal is from two judgments of the Supreme Court, Kings County, both dated August 21, 1980, the first of which, *inter alia,* dismissed the application to invalidate and the second of which, *inter alia,* granted the application to validate the designating petition (the notice of appeal is deemed amended so as to also be from said judgment granting the application to validate). Judgments reversed, on the law and the facts, without costs or disbursements, application to invalidate the designating petition granted, application to validate the designating petition dismissed and the Board of Elections is directed to remove the name of Moses S. Harris from the appropriate ballot. Over 6,000 signatures were obtained in support of Moses S. Harris' designation as a candidate for the office of Representative to the United States Congress in the Democratic Party primary. Of these, over 2,400—40%—were attested to by four notaries public, two of whom are attorneys duly admitted to practice before the Bar in this State, one of whom acted as the candidate's counsel and also as his campaign manager. Additional signatures were taken by subscribing witnesses. Testimony at trial, credited as truthful by Special Term, indicated that in at least nine individual cases, the signatures of these witnesses had

not been taken by the notary or, as the case may be, by the subscribing witness. This fact certainly is indicative of impropriety in the method used to acquire signatures and, to this court, manifest fraud on the part of the persons involved in collecting the signatures. We also take note of the method used in obtaining the signatures on behalf of the candidate. A so-called "team" approach was employed whereby the notary would go to a location in the district with two or three signature gatherers. When the signature collector found someone willing to sign he would ostensibly call in the notary to administer an oath in accordance with the Election Law. Such a method led to the abuses which occurred here. Testimony by nine of the signatories as to irregularities would not, ordinarily, present sufficient evidence to invalidate the entire petition (see *Matter of Lefkowitz v Cohen*, 262 App Div 452, affd 286 NY 499). However, when the fact of nine irregularities is coupled with so suspect a method of obtaining signatures and with the fact that one of the foremost signature collectors was so closely connected to the candidate himself, being his campaign manager and attorney, the inescapable conclusion must be reached that the entire petition was permeated by fraud (cf. *Matter of Donnelly v Dowd*, 12 NY2d 651). Accordingly, the judgments must be reversed and, *inter alia*, the application to invalidate the designating petition granted. Mollen, P. J., Damiani, Mangano, Gulotta and Weinstein, JJ., concur.