(August 27, 1986)

■ In the Matter of STAN LUNDINE, Respondent-Appellant, v ABRAHAM J. HIRSCHFELD, Appellant-Respondent, et al., Respondents. (And Two Other Related Proceedings.)—Per Curiam. Appeal from a judgment of the Supreme Court at Special Term (Bradley, J.), entered August 20, 1986 in Albany County, which, *inter alia,* granted petitioner Stan Lundine's application, in a proceeding pursuant to Election Law § 16-102, to declare invalid the designating petition naming respondent Abraham J. Hirschfeld as a Democratic Party candidate for the office of Lieutenant Governor in the September 9, 1986 primary election.

The designating petition which was filed by Abraham J. Hirschfeld on July 10, 1986 with the State Board of Elections (Board) purporting to designate him as a Democratic Party candidate for Lieutenant Governor in the September 9, 1986 primary election contains approximately 70,000 signatures assembled into 126 volumes. Upon review of timely objections filed by Martin S. Begun and David H. Peirez (objectors), the Board determined that the petition contained the number of valid signatures required by Election Law § 6-136 (1); that the petition was in substantial compliance with Election Law § 6-134 pertaining to the cover sheet requirements; and that the remaining objections were either de minimis or otherwise insufficient. Special Term consolidated for trial a proceeding commenced by Hirschfeld to validate his designating petition with a proceeding brought by Stan Lundine, the candidate designated by the New York State Democratic Committee for the office of Lieutenant Governor, to invalidate the petition, and a third proceeding brought by the objectors also seeking invalidation.

Following a lengthy trial in which four Referees participated in an examination of Hirschfeld's petition on a line-by-line basis, Special Term concluded that the designating petition as a whole was not even in substantial compliance with the Election Law, particularly § 6-134 (4), and therefore invalidated the petition. Hirschfeld has appealed, and the objectors and Lundine (petitioners) have cross-appealed from that part of Special Term's determination which found that the petition was not permeated with fraud, as well as the court's conclu-

sion that the petition was not invalid for failure to comply with Election Law § 6-134 (2).

In our view, Special Term properly invalidated the petition. Election Law § 6-134 (4) provides that: "The sheets of a petition designating a candidate for an office to be filled by the voters of the entire state shall be filed in volumes separated according to the congressional districts in which are located the residences of the greatest number of signatories on each sheet. Within each congressional district, the sheets of such petition shall be separated according to the counties in which the greatest number of signatories were obtained. The cover sheet of the petition and each volume shall * * * indicate the numbers of the congressional districts and the names of the counties contained in each volume." Contrary to Hirschfeld's interpretation, this subdivision relates to matters of statutorily mandated content, not form, and therefore must be strictly complied with (see, Matter of Hutson v Bass, 54 NY2d 772; Matter of Brace v Scaringe, 96 AD2d 1012, lv denied 60 NY2d 552). The instant State-wide designating petition must contain a minimum of 20,000 valid signatures, with at least 100 valid signatures coming from at least half of the State's congressional districts (Election Law § 6-136 [1]). The compilation of volumes and cover sheet requirements of Election Law § 6-134 (4) are designed not only to eliminate the potential for fraud, but also to ensure compliance with this distributional requirement (see, Matter of Contessa v McCarthy, 40 NY2d 629).[1]

Our review of the designating petition in question confirms, as Special Term found, that virtually one third of the volumes failed to comply with the statutory requirements of the Election Law. For example, numerous volumes contained signatures from congressional districts or counties which were not indicated on the cover sheets of the volumes.[2] Indeed, there

---

1. Contessa was decided under former § 138 (8) of the Election Law, the predecessor of Election Law § 6-134 (4); the requirements contained in both statutes are essentially the same.

2. We note that with respect to several of these volumes, it was the congressional district containing the greatest number of signatories which was not indicated on the cover sheets. It should also be emphasized that while Election Law § 6-134 (4) requires that the sheets of signatures of a designating petition be grouped in volumes separated according to the congressional districts in which are located the residences of the greatest number of signatories on each sheet, it does not, as petitioners claim, require that the predominant congressional district be indicated or emphasized on the cover sheet. What the statute mandates is that every congres-

was a pervasive failure to indicate any of the counties of signatories on the cover sheets as required by the statute. Several other volumes were so improperly assembled that the predominant congressional district could not readily be determined. In one volume, no congressional district at all was indicated on the cover sheet. Considered in the aggregate, it becomes readily apparent that there has not been even substantial compliance with the statute, let alone the *strict* compliance required by judicial precedent *(see, Matter of Contessa v McCarthy,* 40 NY2d 629, 630, *supra).* Under these circumstances, Special Term properly invalidated the entire petition *(see, Matter of Pecoraro v Mahoney,* 65 NY2d 1026). In so deciding, we emphasize that it is not the function of the courts to scrutinize a petition of this magnitude in an effort to verify whether the distribution requirements of Election Law § 6-136 (1) have been met. The statutory requirements for a State-wide designating petition are not unduly burdensome and may be satisfied through reasonable diligence on the part of a candidate *(see, Matter of Hutson v Bass, supra,* p 774).

In sum, we hold that where, as here, approximately one third of the volumes making up the petition are defective because of failure to comply with the assembly and cover sheet requirements mandated by Election Law § 6-134, Court of Appeals precedents *(see, Matter of Pecoraro v Mahoney, supra; Matter of Hutson v Bass, supra; Matter of Contessa v McCarthy, supra)* constrain the invalidation of the petition even if the remaining volumes contain more than the requisite 20,000 valid signatures.

We have examined petitioners' claim that "fraud and irregularity so permeated the designating petition as a whole as to call for its invalidation" *(Matter of Flower v D'Apice,* 104 AD2d 578, *affd* 63 NY2d 715; *see, Matter of Proskin v May,* 40 NY2d 829), and hold that Special Term correctly refused invalidation on such ground. There is, as Special Term observed, insufficient evidence to establish Hirschfeld's personal involvement in any wrongdoing. While the record bears out certain of petitioners' assertions of forgery and other fraudulent activities attributable to Hirschfeld's staff, such miscon-

---

sional district included within a volume be indicated on the cover sheet. Nevertheless, the failure to indicate a congressional district which is the predominant one within a certain volume appears to be a particularly egregious failure to comply with the statute's requirements. Further, contrary to Hirschfeld's claim, Special Term did not determine that the statute requires the cover sheet to distinguish the predominant congressional district.

duct did not rise to the level required to invalidate the entire petition *(see, Matter of Pilat v Sachs,* 59 AD2d 515, *affd* 42 NY2d 984; *cf. Matter of Proskin v May, supra; Matter of Golden v Smoler,* 17 NY2d 938).

The remaining contentions by both Hirschfeld and petitioners have been considered and found to be unpersuasive.

Judgment affirmed, without costs. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.